IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION

JOS. A. BANK CLOTHIERS, INC.,            *

                          Plaintiff,            *

vs.                                      *            Civil Action No.:1:15-cv-03075 ELH

J.A.B. – COLUMBIA, INC., *et al*.,       *

                      Defendants.            *

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## PLAINTIFF'S MEMORANDUM IN SUPPORT OF ITS
## MOTION FOR A PROTECTIVE ORDER

Plaintiff/Counterclaim Defendant Jos. A. Bank Clothiers, Inc. ("Jos. A. Bank"), pursuant to Federal Rules of Civil Procedure 26(c), submits this memorandum in support of its Motion for a Protective Order to limit the testimony sought in Defendants/Counterclaim Plaintiffs J.A.B. – Columbia, Inc.; J.A.B. - Harbison, Inc.; and J.A.B. – Forest Drive, Inc.'s ("Franchisees") Amended Notice of Rule 30(b)(6) Deposition ("Rule 30(b)(6) Notice").

## I. INTORDUCTION

Jos. A. Bank is seeking an order of protection from this Court striking eight (and modifying one) of the 29 deposition topics identified by the Franchisees in their Rule 30(b)(6) Notice.  Jos. A. Bank understands and acknowledges that the scope of discovery is typically broad.  In light of the unique circumstances of this case, however, it is asking this Court to limit the Franchisees' ability to seek additional cumulative discovery related to events that occurred approximately 20-25 years ago.  Based on the discovery taken in this case to date, evidence

relating to these events is demonstrably irrelevant.  Additionally, because the deposition topics

relate to events that occurred so long ago, the burden placed on Jos. A. Bank to prepare a witness

to testify about them would be substantial.  That burden is exacerbated by the fact that the two

former Jos. A. Bank employees with the most knowledge of many of the deposition topics –

Timothy Finley, its former CEO, and Charles Frazer, its former general counsel – were hired by

an affiliate of the Franchisees shortly before this dispute arose, and, as a result, they are not fully

available to Jos. A. Bank.  The burden would be wholly disproportionate to the non-existent

utility that such testimony would provide.

Jos. A. Bank asked the Franchisees to withdraw these topics.  They declined.[1]

Accordingly, given these unique circumstances, Jos. A. Bank respectfully requests that this Court

strike the topics and reduce Jos. A. Bank's burden to provide irrelevant evidence, in what has

already been very expensive litigation.

## II. FACTUAL BACKGROUND

This is a contract dispute.  It involves unambiguous contract language governing the

renewal rights of three Jos. A. Bank franchises.  Jos. A. Bank entered into separate franchise

agreements with each of the three Defendants/Counter-Plaintiffs – J.A.B. - Columbia, Inc.,

J.A.B. - Forest Drive, Inc. and J.A.B. - Harbison, Inc. – in 2005, 2009 and 2010 respectively.

The contract language governing the Franchisees' rights to renew their franchises is

substantially identical in each of the three agreements.  Each Franchisee Agreement had an initial

---

[1] On November 10, 2016, counsel for Jos. A. Bank and counsel for the Franchisees conferred in a good faith effort to resolve the issues raised in this motion. However, counsel was unable to reach an agreement as to the disputed issues.

13745667-v3

term of ten years or less and explicitly provided for a single renewal term of ten years – that is, each Franchisee was granted the right "to buy a successor franchise for the Store".  (See Complaint at ¶ 16) (emphasis added).

Notwithstanding that clear language, the Franchisees claim that the franchise agreements grant them the right to perpetual, unlimited franchise renewals.  Alternatively, they claim that if the contract language does not grant them that right, the agreements should be interpreted as perpetual in light of promises allegedly made in 1991 by Mr. Finley, the then-CEO of Jos. A. Bank, to different franchisees.[2]

Specifically, the Franchisees claim that in 1991, when John Bell negotiated a franchise agreement with Jos. A. Bank for a store located in Asheville, North Carolina, and owned by an entity called J.A.B. – Asheville, Inc., Mr. Finley promised Mr. Bell that that agreement could be renewed in perpetuity, as could any future franchise agreements between companies controlled by Mr. Bell and Jos. A. Bank.  No one claims that any such promises were made in connection with the negotiation of the franchise agreements at issue in this case.  Rather, the Franchisees assert that their interpretation of the three agreements governing the stores located Columbia, South Carolina, are controlled by the conversations that occurred between Mr. Bell and Mr. Finley in 1991.  (See, e.g., July 26, 2016 Deposition Transcript of John Bell, III ("Bell Dep."), a portion of which is attached hereto as Exhibit 1, at 48 (Mr. Bell "all agreements that came after

---

[2] The Franchisees are under common control with ten other Jos. A. Bank franchises -- Asheville, NC; Knoxville, TN; Jackson, MI; New Orleans, LA; Metairie, LA; Baton Rouge, LA; Mandeville, LA; Montgomery, AL; Augusta, GA, and West Knoxville, TN.  Each franchise has its own franchise agreement.  Other than these 13 commonly-controlled franchises, Jos. A. Bank has one other franchise store located in Springfield, IL.

the Asheville agreement were…based on the representations that were made in the early days.").)

Throughout the last ten months of discovery, Jos. A. Bank has investigated the Franchisees' claim that they relied upon Mr. Finley's alleged promises when they negotiated the Columbia Franchise agreements in 2005, 2009 and 2010.  Both the documentary and the testimonial evidence establish definitively that Mr. Bell could not and did not rely on events that occurred in 1991.

To begin with, the evidence establishes that when the Franchisees entered into the Franchise Agreements in this case, Mr. Bell was fully aware that the Company's position was that the agreements did not grant the right to perpetual renewals.  When questioned about these documents during his July 26, 2016 deposition, Mr. Bell admitted that by 2002, he was aware that Jos. A. Bank took the position that the franchises he controlled did not have the right to renew in perpetuity.

> Q.    And their position was that you did not have the right to renew forever, correct?
>
> A.    That was their position.
>
> Q.    In 2002, as well as going forward from there?
>
> A.    That was – if I remember, that was their position.  Yes.

(Bell Dep. at 116.)  Mr. Bell further admitted that he specifically understood in 2005, when he was negotiating the first Columbia Franchise Agreement, that Jos. A. Bank took the position that the franchises were not evergreen.

> Q.    Did you have any discussions with Chuck Frazer prior to entering into the 2005 JAB Columbia agreement, to the effect that Tim Finley had

- 4 -

> promised you that you would be able to renew forever, so long as you
> weren't in default.
>
> A.      I think by that time that subject was long understood….
>
> Q.      And you understood that Joseph A. Bank did not agree with that, correct?
>
> A.      At that point in time, their position was that we didn't….

(Id. at 136-137.). Therefore, at the time Mr. Bell negotiated the first Columbia Franchise

Agreement, he was fully aware that Jos. A. Bank took the position that the franchises

were not in perpetuity.

This admission was coupled with undisputed documentary evidence.  For example, on

September 7, 2001, Mr. Frazer wrote a letter to Mr. Bell, which stated:

> As I believe you know, Jos. Bank is not currently offering new franchise opportunities.
> This moratorium includes development or territorial rights.  If, in the future, Jos. Bank
> were to consider the grant of a new franchise, we would require from the applicant a
> business plan, including store location, store size, volume estimate and a pro forma profit
> and loss statement.  Jos. Bank's consideration of the proposal would be upon terms
> different from those contained in the existing franchise agreements.

(See September 7, 2001 Letter from Frazer to Bell, attached hereto as Exhibit 2) (emphasis

added).

Five months later, on February 6, 2002, Mr. Bell proposed to Mr. Frazer that, in addition

to the one ten-year renewal due to the Asheville, NC and Knoxville, TN stores under their

franchise agreements, Jos. A. Bank grant both of them the right to renew their franchises "for

another ten-year term to commence upon expiration of the renewal term in 2012…." (See

February 6, 2002 Letter from Bell to Frazer, attached hereto as Exhibit 3.)  On February 21, 2002

and March 19, 2002, Mr. Frazer responded to Mr. Bell's proposal.  In both cases he accepted Mr.

Bell's request to renew the two franchises for one ten-year renewal through 2012, but

- 5 -

"specifically decline[d] to enter into [the] proposed letter agreement dated February 6, 2002," *i.e.,* the request for the <u>second</u> renewal.  (<u>See</u> February 21, 2002 and March 19, 2012 Letters from Frazer to Bell, attached hereto as <u>Exhibit 4</u> and <u>Exhibit 5</u>.)  Mr. Bell subsequently negotiated a second ten-year renewal term for both the Asheville and Knoxville stores for a period from 2012 through 2022 – but only by waiving the Asheville store's right of first refusal to open a store in Spartanburg, SC  (<u>See</u> June 19, 2002 Letter Agreement between Jos. A. Bank and J.A.B. – Asheville, Inc. and J.A.B. – Knoxville, Inc., attached hereto as <u>Exhibit 6</u>.)  These documents demonstrate that, on multiple occasions, Jos. A. Bank communicated unequivocally to Mr. Bell that any future franchise agreements would not be bound by past events and that the Company did not believe that the Asheville and Knoxville franchise agreements were perpetual.

Despite this undisputed evidence, the Franchisees are seeking substantial discovery regarding events that pre-date 2002.  The Rule 30(b)(6) Notice identifies the following eight topics:

1. The initial negotiations in 1991 and 1992 between Jos. A. Bank and any of the Bell Group (as defined in the pleadings), including but not limited to, John W. Bell, III, in which Jos. A. Bank induced the Bell Group to become Jos. A. Bank franchisees.

2. Jos. A. Bank's use of a VID-MARK or VIP-MARK franchise agreement as the model for other franchise agreements; and the decision to remove or modify certain provisions, including but not limited to provisions contained in the "TERM AND RENEWAL" and "ACKNOWLEDGEMENTS" sections of the "Initial Franchise Agreements" (as defined in the pleadings).

3. Jos. A. Bank's use of a "DOKTOR" franchise agreement as the model for other franchise agreements; and the decision to remove or modify certain provisions, including but not limited to provisions contained in the "TERM AND RENEWAL" and "ACKNOWLEDGEMENTS" sections of the "Initial Franchise Agreements" (as defined in the pleadings).

13745667-v3

4.      Use of any other franchise agreement as a model.[3]

*** 

7.      Jos. A. Bank's basis for hiring Timothy Finley and its satisfaction with
        Mr. Finley's performance.[4]

8.      Jos. A. Bank's basis for hiring John W. Bell, III and its evaluation of Mr.
        Bell's performance.[5]

9.      All dealings and communications between Jos. A. Bank and Bell, French
        & Associates, Inc., and any of its principals and agents, including, but not
        limited to John W. Bell, III and John F. French.[6]

*** 

12.     The drafting, negotiation, interpretation, construction, and provenance of
        the renewal sections of Jos. A. Bank's franchise agreements that were
        signed during the time period of 1995 to 1998.

For the reasons set forth below, Jos. A. Bank seeks protection from these irrelevant and

oppressive deposition topics.

## II. ARGUMENT

### A.      Standard for Granting Motion for Protective Order

Rule 30(b)(6) of the Federal Rules of Civil Procedure provides, in relevant part, that "a

party may name as the deponent a public or private corporation" to "designate one or more

officers, directors or managing agents, or designate other persons who consent to testify on its

behalf."  A Rule 30(b)(6) designee "must testify about information known or reasonably

---

[3] Topics 2 through 4 pertain to drafts of the franchise agreements that date from the 1990s.
[4] Mr. Finley's tenure as Jos. A. Bank's CEO ended in 1999.
[5] Mr. Bell's tenure as an employee of Jos. A. Bank ended in July 1994.
[6] Bell, French & Associates, Inc.'s services to Jos. A. Bank ended in the late 1990s.

available to an organization."  Critically, the information sought must be limited to information

that is "relevant to the claims or defenses in the case."  Coryn Grp. II, LLC v. O.C. Seacrets, Inc.,

265 F.R.D. 235, 238 (D. Md. 2010); Fed. R. Civ. P. 26(b)(1).

 Rule 26(c) of the Federal Rules of Civil Procedure provides that this court "may, for

good cause, issue [a protective] order to protect a party … from annoyance, embarrassment,

oppression or undue burden or expense."  "The burden is on the movant to establish good cause

under Rule 26(c); the movant must set forth specific and particular facts, rather than broad

conclusory statements as to why a protective order should issue."  Innovative Therapies, Inc. v.

Meents, 302 F.R.D. 364, 377 (D. Md. 2014).  The movant must "demonstrate that the discovery

sought lacks relevance to the extent that the likelihood and severity of the harm or injury caused

... outweighs any need for the information."  Id. (internal quotation omitted).

**B.     Good Cause Exists to Strike Topics 1, 2, 3, 4, 7, 8, 9 and 12.**

The undisputed evidence developed to date, through discovery, establishes that Topics 1,

2, 3, 4, 7, 8, 9 and 12 are irrelevant and not reasonably calculated to lead to the discovery of

admissible evidence.  Mr. Bell's admission, and the supporting documents, demonstrate that, by

2002, Mr. Bell was fully aware that Jos A. Bank did not believe that the franchise agreements

existed in perpetuity or that Jos. A. Bank was bound by prior events.  Because of this knowledge,

any alleged promises made to Mr. Bell in 1991 by the then-CEO of Jos. A. Bank are completely

irrelevant to the interpretation of the Columbia franchise agreements, the first of which was not

executed until 2005.  In 2005, 2009, and 2010, the Franchisees could not have reasonably relied

on Mr. Finley's alleged promises when they were aware, at that time, that the Company did not

- 8 -

agree that it was bound to grant perpetual franchise agreements.  Accordingly, there is no relevance to testimony regarding events that occurred between 1991 and 1999.[7]

Given the complete lack of relevance, good cause exists to strike Topics 1, 2, 3, 4, 7, 8, 9 and 12, especially considering the significant burden that would be placed on Jos. A. Bank to prepare a witness for these topics.  No one currently employed by Jos. A. Bank has first-hand personal knowledge of what occurred in 1991.  Jos. A. Bank is a large company that, in the last twenty-five years, has changed leadership, personnel, electronic systems and offices.  Most recently, in Spring 2014, it was bought by an unrelated entity, The Men's Warehouse.  That acquisition resulted in the departure, in early 2015, of most of Jos. A. Bank's personnel.

Furthermore, after 10 months of discovery, the only people who have been identified as being witnesses to the alleged promises made in the early 1990s are (i) the Franchisees, (ii) Tim Finley, who recently, as this dispute was brewing, became employed by the Biltmore Property Group, an entity controlled by Mr. Bell and his partners, and (iii) Jake Reinhart and Chick Schwartz, former Jos. A. Bank executives, who are both deceased.  The person with the most historical knowledge regarding the franchises and the most interaction with the Franchisees on behalf of Jos. A. Bank, Mr. Frazer, is not only no longer employed by Jos. A. Bank, but was also hired by the Biltmore Property Group after the Franchisees began planning for this dispute.  It would be a herculean task for Jos. A. Bank to locate and prepare a witness who could testify on

---

[7] Jos. A. Bank further objects to Topics 7 and 8, in which the Franchisees seek Jos. A Bank to testify regarding "Jos A. Bank's basis for hiring Timothy Finley and its satisfaction with Mr. Finley's performance" and "Jos. A. Bank's basis for hiring John W. Bell, III and its evaluation of Mr. Bell's performance." Mr. Finley and Mr. Bell's business acumen and performance are not relevant to the issues of this lawsuit, which revolve around the interpretation of the 2005, 2009 and 2010 Columbia franchise agreements. Furthermore, Jos. A. Bank's basis for hiring these individuals does not relate in any way to the Franchise Agreements in this case, which came years later after their tenures at Jos. A. Bank.

13745667-v3

the Company's behalf regarding these topics.  In fact, Jos. A. Bank anticipates that the only way it will be able to prepare a witness on any of these topics will be to have that witness review hundreds of pages of documents and deposition testimony from this litigation.  Any such witness, therefore, will only be parroting other evidence that already exists in this action, which further diminishes the utility of this discovery.

In sum, the large and unfair burden, engineered by the Franchisees when they hired Messrs. Frazer and Finley, to prepare a witness on these topics substantially outweighs the limited utility of such testimony; therefore, good cause exists for this Court to issue a protective order striking Topics 1, 2, 3, 4, 7, 8, 9 and 12.

### C.    Deposition Topic 10 Should Also be Narrowed.

Paragraph 10 seeks a witness to testify regarding "the concept of 'evergreen renewals' in general and with respect to the franchise agreements at issue in this action."  Jos. A. Bank is seeking to have this Court strike the first portion of this Topic, specifically the reference to "the concept of 'evergreen renewals' in general."  "The concept of 'evergreen renewals' in general" is not a proper topic to designate in a 30(b)(6) notice.  In addition to being too vague, it appears to call for legal opinion or expert testimony regarding franchise agreements in general.  Jos. A. Bank cannot prepare someone to testify regarding "the concept of 'evergreen renewals' in general" because that topic does not fall under "information known or reasonably available to an organization" as required by Rule 30(b)(6).

13745667-v3

### III. CONCLUSION

For the reasons stated herein, Plaintiff/Counterclaim Defendant Jos. A. Bank Clothiers, Inc. requests that the Court grant its Motion for a Protective Order.

Date:  <u>November 21, 2016</u>                              Respectfully submitted,


                                                        _____/s/_____
                                                        James A. Dunbar (Bar No. 07392)
                                                        jadunbar@venable.com
                                                        Heather L. Mitchell (Bar No. 27169)
                                                        hlmitchell@venable.com
                                                        Venable LLP
                                                        210 West Pennsylvania Avenue, Suite 500
                                                        Towson, Maryland 21204
                                                        (410) 494-6200 (telephone)
                                                        (410) 821-0147 (fax)
                                                        *Attorneys for Jos. A. Bank Clothiers, Inc.*

- 11 -

13745667-v3